UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-24227-CIV-ALTONAGA/Otazo-Reyes

JULIO SANCHEZ,

    Plaintiff,
vs.

**CITY OF SOUTH MIAMI**,

    Defendant.
    _____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, City of South Miami's ("Defendant['s]" or "the City['s]") Motion to Dismiss Counts III, IV, and V of the Second Amended Complaint ("Motion") [ECF No. 28], filed on February 4, 2013. Plaintiff, Julio Sanchez ("Sanchez" or "Plaintiff"), brought this damages and declaratory action against the City for violations of Plaintiff's civil rights under 42 U.S.C. section 1983 ("Section 1983"). (*See* Second Am. Compl. ¶ 3 [ECF No. 23]). Counts III, IV, and V allege constitutional violations of the First, Fourth, and Fourteenth Amendments, respectively. (*See id.* ¶¶ 69–83). The Court has carefully reviewed the Motion, the record, and applicable law.

### I. BACKGROUND[1]

This case concerns claims against the City arising from Sanchez's arrest for violating the City's Noise Ordinance, Section 15-81 ("Noise Ordinance"). (*See id.* ¶ 34). On December 12, 2009 Sanchez held a "Quinces" or "Fifteenth" birthday party for his daughter at his home in South Miami. (*See id.* ¶ 10). The party began around 7:30 p.m. and was attended by twenty to

---

[1] The Court takes the allegations in the Second Amended Complaint as true.

Case No. 12-24227-CIV-ALTONAGA

thirty children; Sanchez, Sanchez's wife, and parents of some of the guests chaperoned the party. (*See id.* ¶¶ 11-12). A DJ played music on the patio area of the home. (*See id.* ¶ 11). Sanchez served snacks and soft drinks at the party, but no alcohol. (*See id.* ¶¶ 13-14).

At approximately 9:30 p.m., South Miami Police Officer Rodriguez ("Rodriguez") arrived at the Sanchez home to investigate a noise complaint. (*See id.* ¶ 17). Rodriguez requested that the volume of the music system be turned down. (*See id.* ¶ 20). Sanchez complied with Rodriguez's request and took the precautionary step of having one of the sound system speakers unplugged. (*See id.* ¶¶ 21-22). Sanchez then asked Rodriguez if the noise level was appropriate and lawful. (*See id.* ¶ 23). Rodriguez stated that the noise level was appropriate and could continue at that level. (*See id.* ¶ 24). After Rodriguez left the Sanchez home the volume of the music was not increased. (*See id.* ¶ 29).

Approximately one hour after Rodriguez left, South Miami Police Officer Vigil ("Vigil") arrived at the Sanchez home and ordered the music to be turned off and the party to end. (*See id.* ¶ 30). Vigil told Sanchez that the music was too loud and in violation of the Noise Ordinance. (*See id.* ¶ 31). Sanchez explained to Vigil the volume of the music had not changed from the level that Rodriguez had previously approved. (*See id.* ¶ 32). Vigil arrested Sanchez and charged him with violating the Noise Ordinance. (*See id.* ¶ 34). In doing so Vigil stated "myself as an officer cannot say what the proper [noise] level is," and "if somebody calls and complains, regardless of how loud or not loud it is, it constitutes a violation." (*Id.* ¶ 43 (alterations in original and emphasis removed)). The City provides no training or guidelines to its officers as to what constitutes a violation of the Noise Ordinance. (*See id.* ¶ 44).

Case No.  12-24227-CIV-ALTONAGA

As a result of Sanchez's arrest the party ended, and parents were called to pick up their children early.  (*See id.* ¶¶ 49-50).  When parents arrived, they found Sanchez handcuffed, sitting in the back of a South Miami police car.  (*See id.* ¶ 50).  A criminal prosecution was instituted against Sanchez in the County Court of Miami-Dade County.  (*See id.* ¶ 51).  All charges were dismissed on May 13, 2010.  (*See id.* ¶ 52).

The operative complaint in this action is now in its third iteration.  Sanchez originally filed the action in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida on February 3, 2011, alleging state tort claims for "false imprisonment/arrest" and "battery."  (Notice, Ex. A Part 1, at 3–7 [ECF No. 1-2]).  Leave to amend to add Count III — a 42 U.S.C. section 1983 claim against a municipality — was granted by the state court on October 30, 2012 (*see* Notice, Ex. A Part 2, at 72 [ECF No. 1-3]), and Plaintiff subsequently filed his First Amended Complaint.  (*See id.* 73–78).  The matter was then removed on November 28, 2012.  (*See* Notice [ECF No. 1]).  By Order dated January 7, 2013 [ECF No. 19], the Court granted Defendant's Motion to Dismiss Count III [ECF No. 7], but permitted Plaintiff leave to amend.  Plaintiff filed his Second Amended Complaint on January 14, 2013, adding Counts III (titled, "Violation of First Amendment, 42 U.S.C. § 1983), IV (titled, "Violation of Fourth Amendment, 42 U.S.C. § 1983"), and V (titled, "Violation of Fourteenth Amendment, 42 U.S.C. § 1983").  (Second Am. Compl. 8–10).  Defendants now seek to dismiss these three counts.

## II.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S.

Case No. 12-24227-CIV-ALTONAGA

Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

## III. ANALYSIS

### A. Count III — First Amendment Claim

Sanchez alleges in Count III that the Noise Ordinance is unconstitutionally vague and overbroad, and enforcement of the Noise Ordinance, therefore, prohibits "constitutionally protected expressive conduct and the fundamental right of association" in violation of Sanchez's First Amendment rights. (Second Am. Compl. ¶ 72). Defendant appears to contend Plaintiff fails to state a First Amendment claim for three reasons: (1) the Noise Ordinance is presumptively valid (*see* Mot. 3); (2) the Noise Ordinance does not qualify as an actionable "custom and policy" under *Monell v. Department of Social Services*, 436 U.S. 658 (1977) (*see*

4

Case No. 12-24227-CIV-ALTONAGA

Reply 1, 3); (3) Plaintiff does not seek to declare the Noise Ordinance unconstitutional (*see* Mot. 4 n.2); and (4) even if Plaintiff were seeking to declare the Noise Ordinance unconstitutional, "such a claim would fail because [the Noise Ordinance] is rationally related to a legitimate governmental interest" (*id.*).  The Court addresses these arguments in turn.

Defendant first argues that the Noise Ordinance is presumptively valid, and thus Vigil "was not required to risk being charged with dereliction of duty if he did not arrest Plaintiff" for allegedly violating the Noise Ordinance.  (Mot. 3 (internal quotation marks omitted)).  Even if the City were correct that a claim brought against Vigil would fail for this reason, Plaintiff has not brought suit against Vigil.  Rather, Plaintiff has brought suit against the City in its municipal capacity, and the City fails to explain why this argument is applicable to it.

Indeed, the Supreme Court in *Monell* held that "municipalities and other local government units [were] to be included among those persons to whom § 1983 applies," and therefore "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, *ordinance*, regulation, or decision officially adopted and promulgated by that body's officers."  436 U.S. at 690 (emphasis added and footnote call numbers omitted).  Here, Plaintiff claims unconstitutional restriction of his First Amendment rights occurred as a result of the City's execution of the Noise Ordinance.  This claim falls squarely within the type of municipal liability contemplated by *Monell* and does not require the Court to expand *Monell*'s application, contrary to Defendant's second argument.  That Plaintiff does not allege a "custom" or "policy" is not fatal to his claim because *Monell* applies equally to official ordinances and regulations, such as the Noise Ordinance, as well as to "governmental

5

Case No. 12-24227-CIV-ALTONAGA

'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." 430 U.S. at 691.

Defendant's third argument rests on Plaintiff's purported failure to seek to have the Noise Ordinance declared unconstitutional (*see* Mot. 4 n.2), and not on whether Plaintiff has plead facts sufficient to support his claim that enforcement of the Noise Ordinance infringed upon Plaintiff's First Amendment rights. The Second Amended Complaint clearly alleges, however, "South Miami Ordinance Section 15-81 is unconstitutional both on its face and as applied to Plaintiff, in that it is vague, overbroad and punishes constitutionally protected expressive conduct and the fundamental right of association in violation of the First Amendment to the United States Constitution." (Second Am. Compl. ¶ 72). Furthermore, in stating the relief sought, "Plaintiff respectfully requests this Court [to] . . . [d]eclare that South Miami Ordinance Section 15-81 is unconstitutional on its face and as applied to Plaintiff Sanchez." (*Id.* 11).

Finally, Defendant argues in a footnote that Count III fails because the Noise Ordinance "is rationally related to a legitimate governmental interest." (Mot. 4 n.2). In support, the City relies on *Armour v. City of Indianapolis*, 132 S. Ct. 2073 (2012), and *Restigouche, Inc. v. Town of Jupiter*, 59 F.3d 1208 (11th Cir. 1995). The City's reliance on these cases is inapposite. These cases outline that the rational basis test applies to determine the constitutionality of ordinances concerning taxation and zoning issues, respectively, and neither addresses claims of First Amendment violations. As the City should be aware, in the First Amendment arena, the standard is strict scrutiny. *See e.g.*, *Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972) ("Our cases make clear that in assessing the reasonableness of a regulation, we must weigh heavily the fact that communication is involved; the regulation must be narrowly tailored to further the

6

Case No. 12-24227-CIV-ALTONAGA

State's legitimate interest." (footnote call numbers omitted)); *Grand Faloon Tavern, Inc. v. Wicker*, 670 F.2d 943, 946 (11th Cir. 1982) ("Under the doctrine of overbreadth, a court may deny the enforcement of an ordinance that at the expense of First Amendment freedoms, reaches more broadly than is reasonably necessary to protect legitimate (governmental) interests.'" (internal quotation marks, alterations, and citation omitted)); *Broadrick v. Oklahoma*, 413 U.S. 601, 611–12 (1973) ("[S]tatutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society." (citation omitted)). The City does not examine the Noise Ordinance under the appropriate standard. Further, Sanchez alleges facts — that his daughter's party came to a premature end as a result of his arrest, rendering Sanchez and his family and friends unable to enjoy the traditional rituals of such a party — indicating his First Amendment rights were violated as a result of the Noise Ordinance. (*See* Second Am. Compl. ¶¶ 30–36).

For the foregoing reasons, the City's Motion to dismiss Count III is denied.

**B. Count IV — Fourth Amendment Claim**

Sanchez alleges in Count IV that he was "unreasonably and unlawfully seized" in violation of his Fourth Amendment rights when Vigil arrested him for violating the Noise Ordinance. (Second Am. Compl. ¶ 77). It appears Sanchez contends his seizure was unreasonable and unlawful because the Noise Ordinance — pursuant to which he was arrested — is unconstitutional; Sanchez's arrest by Vigil implicates Defendant because the City "implement[ed] and execut[ed]" the Noise Ordinance. (*Id.* ¶ 76; *see also* Resp. 9). Defendant asserts these allegations fail to state a claim for three reasons: (1) "police officers act lawfully

Case No. 12-24227-CIV-ALTONAGA

when they arrest individuals, even if the ordinance at issue is later . . . found [to be] unconstitutional" (Mot. 3)[2]; (2) Plaintiff fails to allege any facts "indicating that the City had a policy of permitting its officers to conduct unlawful detentions of those who violate its ordinances" (*id.* 5); and (3) Plaintiff may not hold the City liable under the doctrine of *respondeat superior* (*see id.*). The Court addresses these arguments in turn.

Defendant's first argument is premised on whether Vigil's conduct constitutes an unreasonable and unlawful seizure in the context of a Fourth Amendment violation. A municipality may be held "liable for the actions of a police officer only when municipal 'official policy' [or custom] causes a constitutional violation." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing *Monell*, 436 U.S. at 694–95). Thus, Plaintiff cannot assert a claim for *Monell* liability in Count IV if he fails to sufficiently allege a violation of his Fourth Amendment rights.

Sanchez does not assert that Vigil failed to act in good faith or without probable cause when making the subject arrest; rather, Sanchez solely takes issue with the Noise Ordinance's constitutionality. According to Defendant, it is well established that an arrest based on a presumptively valid law precludes a claim for false arrest. (*See* Mot. 2–3 (citing *Pierson v. Ray*, 386 U.S. 547 (1967); *Michigan v. DeFillippo*, 443 U.S. 31 (1979)). The Supreme Court in *Pierson*, however, acknowledged that "the matter is not entirely free from doubt." *Pierson*, 386 U.S. at 555 (footnote call number omitted) (citing RESTATEMENT (SECOND) OF TORTS § 121 caveat, at 207–08 (1965)). The Court went on to illustrate that narrow band of doubt:

---

[2] The City raised this argument with respect to Plaintiff's First Amendment claim, *see supra* 5, however, the Court finds it aptly applies to Count IV, and therefore also considers it as to this claim.

> Police are charged to enforce laws until and unless they are declared unconstitutional. The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality — *with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws*. Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement.

*DeFillippo*, 443 U.S. at 38 (emphasis added).

The text of the Noise Ordinance states: "No person shall create any loud or boisterous noise which may annoy persons on any street or sidewalk or in any building adjacent thereto." CITY OF S. MIAMI, FLA., ORDINANCES ch. 15, art. III, § 15-80. Although Plaintiff does not expressly allege the Noise Ordinance exhibits a vagueness obvious to any person of reasonable prudence, Sanchez does allege that two City of Miami police officers, Rodriguez and Vigil, whose responsibilities include enforcing the City's ordinances, could not agree whether Plaintiff had violated the Noise Ordinance. (*See* Second Am. Compl. ¶¶ 24, 31–32). Ostensibly, "[c]onduct that annoys some people does not annoy others." *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971). Indeed, according to Sanchez, Vigil stated that "if somebody calls and complains, *regardless of how loud or not loud it is*, it constitutes a violation." (Second Am. Compl. ¶ 43 (emphasis added)). Thus, even in the light of *DeFillippo*'s standards, Sanchez adequately alleges that his Fourth Amendment rights were violated as required by *Iqbal* and *Twombly*. *See also infra* 11 (discussing Plaintiff's allegations from which vagueness can be inferred in the context of Plaintiff's Fourteenth Amendment claim).

The City next argues that Plaintiff fails to state a "policy" because "[t]he Complaint fails to identify any facts indicating that the City had a policy of permitting its officers to conduct unlawful detentions of those who violate its ordinances." (Mot. 5 (emphasis removed)).

Case No. 12-24227-CIV-ALTONAGA

Plaintiff has repeatedly argued, however, that the policy with which he takes issue is the Noise Ordinance itself. (*See, e.g.*, Resp. 3). As the Court has discussed, a city ordinance is an official policy that can subject a municipality to Section 1983 liability. *See supra* 5. Thus, as Plaintiff adequately states a claim for *Monell* liability, Defendant's argument that Plaintiff improperly seeks to hold the City liable under a *respondeat superior* theory lacks merit.

### C. Count V — Fourteenth Amendment Claim

In Count V, Plaintiff raises a vagueness challenge to the Noise Ordinance under the due process clause of the Fourteenth Amendment. (*See* Second Am. Compl. ¶¶ 79, 81–82). Specifically, Plaintiff alleges that implementation of the vague ordinance — where enforcers give conflicting information about what constitutes a violation, cannot say explicitly what constitutes compliance, and are given no guidelines regarding what constitutes a violation — leads to enforcement that is arbitrary and therefore a violation of "Plaintiff's rights to due process of law and equal protection under the Fourteenth Amendment to the United States Constitution." (*Id.* ¶¶ 32–33, 42–43, 82). Defendant asserts these allegations fail to state a claim for two reasons: (1) claims for false arrest are properly brought under the Fourth, not the Fourteenth, Amendment (*see* Mot. 5–6); and (2) the Second Amended Complaint's "vague reference to 'arbitrary and capricious conduct' and violation of due process is insufficient to state a claim" (*see id.* 6).

Defendant's first argument fails because Plaintiff does not bring a claim for false arrest in Count V. Rather, Plaintiff challenges the Defendant's implementation, execution, and enforcement of the Noise Ordinance as violating the Plaintiff's Fourteenth Amendment rights. (*See* Second Am. Compl. ¶¶ 81–82). "It is a basic principle of due process that an enactment is

Case No. 12-24227-CIV-ALTONAGA

void for vagueness if its prohibitions are not clearly defined." *Grayned*, 408 U.S. at 108. Plaintiff alleges he was given conflicting statements from Rodriguez and Vigil regarding whether Plaintiff violated the Noise Ordinance; that Vigil asserted officers "cannot say what the proper [noise] level is"; and that no training is provided to officers as to what constitutes a violation. (Second Am. Compl. ¶¶ 24, 31, 32, 42–43).

Although Plaintiff does not specifically assert that the Noise Ordinance is "void for vagueness" in Count V, he alleges facts from which vagueness can be reasonably inferred. The Court "will not dismiss an action simply because a plaintiff fails to use 'magic words' when the pleading is otherwise sufficient." *Platinum Estates, Inc. v. TD Bank, N.A.*, No. 11-60670-CIV, 2012 WL 760791, at *3 (S.D. Fla. Mar. 8, 2012) (quoting *Cabrera v. Martin*, 973 F.2d 735, 745 (9th Cir. 1992)). The Noise Ordinance prohibits "any loud or boisterous noise which may annoy persons," CITY OF S. MIAMI, FLA., ORDINANCES ch. 15, art. III, § 15-80, and the Supreme Court has held that "[t]he First and Fourteenth Amendments do not permit a State to make criminal the exercise of the right of assembly simply because its exercise may be 'annoying' to some people." *Coates*, 402 U.S. at 615. The Supreme Court found the ordinance in *Coates* to be vague, "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. As a result, 'men of common intelligence must necessarily guess at its meaning.'" *Id.* at 614 (citation omitted).

Defendant's second argument fails for essentially the same reasons. Plaintiff alleges facts that imply the Noise Ordinance is subject to arbitrary enforcement. (*See* Second Am. Compl. ¶¶ 24, 31, 32, 42–43, 82). Arbitrary enforcement lies at the heart of a "void for

11

Case No. 12-24227-CIV-ALTONAGA

vagueness" due process claim. *Grayned*, 408 U.S. at 108–09 ("[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." (footnote call numbers omitted)); *see also Hynes v. Mayor & Council of Borough of Oradell*, 425 U.S. 610, 620 (1976) ("As a matter of due process, '[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.' The general test of vagueness applies with particular force in review of laws dealing with speech." (quoting *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939))). Plaintiff adequately alleges that his Fourteenth Amendment rights were violated pursuant to the standard set forth in *Iqbal* and *Twombly*.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 28]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 22nd day of April, 2013.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:  counsel of record